Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>RADIUS RECYCLING CORPORATION,<br><br>Defendant. | No.: 3:25-cv-05938<br><br>**DEFENDANT RADIUS RECYCLING CORPORATION'S MOTION TO DISMISS**<br><br>Note on Motion Calendar: January 20, 2026 |

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1604468829.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION .......................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 2

III.  STANDARD OF REVIEW ........................................................................................... 4

IV.  ARGUMENT AND AUTHORITY ............................................................................... 5

     A.    The Court Should Consider on this Motion Radius's NPDES Permits, Fact Sheet, and the 2023 Nearshore Evaluation and Maintenance Report. ....................... 5

     B.    Soundkeeper's Claims Fail as a Matter of Law and Should be Dismissed. ............... 6

          1.    The plain language of Radius's NPDES permit authorizes the alleged discharges. ....................................................................................... 7

          2.    Radius's permit shield also independently covers the alleged discharges because they were disclosed to Ecology. ................................ 10

          3.    Soundkeeper's remaining claims also fail. ..................................................... 12

V.   CONCLUSION ............................................................................................................. 12

MOTION TO DISMISS  - i

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1604468829.1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Cmty. Action of Toxics v. Aurora Energy Servs., LLC*,
  765 F.3d 1169 (9th Cir. 2014) ................................................................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 5

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) .................................................................................................. 5

*Ctr. For Biological Diversity v. Marina Point Dev. Co.*,
  566 F.3d 794 (9th Cir. 2009) .................................................................................................... 4

*E. I. du Pont de Nemours & Co. v. Train*,
  430 U.S. 112 (1977) ................................................................................................................ 10

*Grubert v. Caliber Home Loans Inc.*,
  2024 WL 4417288 (W.D. Wash. Oct. 4, 2024) ..................................................................... 5, 6

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987) .................................................................................................................... 4

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .................................................................................................... 6

*L.S. by and through Strode v. Bolduan*,
  2025 WL 3492869 (W.D. Wash. Dec. 4, 2025) ....................................................................... 5

*Lamb v. Mortg. Elec. Registration Sys., Inc.*,
  2011 WL 5827813 (W.D. Wash. Nov. 18, 2011) ..................................................................... 6

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .................................................................................................... 6

*Los Angeles Waterkeeper v. SSA Terminals, LLC*,
  702 F.Supp.3d 903 (C.D. Cal. 2023) ........................................................................................ 7

*Natural Res. Def. Council, Inc. v. County of Los Angeles*,
  725 F.2d 1194 (9th Cir. 2013) ................................................................................. 7, 8, 10, 12

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) .................................................................................................... 5

*Piney Run Pres. Ass'n v. County Comm'rs of Carroll Cnty.*,
  268 F.3d 255 (4th Cir. 2001) ............................................................................................ 10, 11

MOTION TO DISMISS - ii

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1604468829.1

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Puget Soundkeeper All. v. APM Terminals Tacoma, LLC*,
  No. 17-cv-5016 BHS, 2020 WL 6445825 (W.D. Wash. Nov. 3, 2020) .................................. 8

*Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*,
  216 F. Supp. 3d 1198 (W.D. Wash. 2015) ........................................................................... 4

*Puget Soundkeeper Alliance v. Port of Tacoma*,
  104 F.4th 95 (9th Cir. 2024)............................................................................... 7, 8, 10, 12

*San Diego Coastkeeper v. Pick-Your-Part Auto Wrecking*,
  2023 WL 4879832 (S.D. Cal. July 31, 2023)....................................................................... 6

*Tennessee Clean Water Network v. Tennessee Valley Authority*,
  206 F. Supp. 3d 1280 (M.D. Tenn. 2016) .......................................................................... 11

**Statutes**

33 U.S.C. § 1311(a).................................................................................................................... 7

33 U.S.C. § 1342(k) ................................................................................................................. 10

33 U.S.C. § 1365(b) ............................................................................................................. 4, 13

Clean Water Act ................................................................................................................. *passim*

Clean Water Act Section 402(b), 33 U.S.C. § 1342(b) ............................................................. 2

**Other Authorities**

40 C.F.R. 135.3 .......................................................................................................................... 4

Fed. R. Civ. P. 12 ..................................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 5, 11

Fed. R. Evid. 201(b) .................................................................................................................. 6

WAC 173-220-060(1) ................................................................................................................ 7

MOTION FOR TRO AND PRELIMINARY INJUNCTION - iii

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1604468829.1

## I. INTRODUCTION

This case is a citizen suit alleging violations of the Clean Water Act. Plaintiff Puget Soundkeeper Alliance's ("Soundkeeper") complaint fails to state a claim and should be dismissed with prejudice under Rule 12(b)(6) because its legal defects cannot be cured.

Defendant Radius Recycling Corporation ("Radius") operates a facility in Tacoma that recycles end-of-life vehicles and other scrap metal delivered by barge, truck, and drop-offs by local consumers. Soundkeeper's claim is that during the barge unloading process in general, some cars and scrap metal fall into the adjacent Hylebos waterway and Radius is therefore "discharging" cars and scrap metal into waters of the United States without a permit in violation of the Clean Water Act.

But Radius does indeed have a permit that authorizes these discharges. Condition S11 of Radius's National Pollution Discharge Elimination System ("NPDES") Permit issued by the Washington Department of Ecology ("Ecology") recognizes that "metal debris" will fall into the waterway in connection with Radius's operations, and requires Radius annually to survey and remove that metal debris and provide a report to Ecology about how much was removed. Ecology regulates these discharges, and Radius has been operating under this condition and reporting annually to Ecology since 2007. These disclosures demonstrate that Ecology was fully aware of the discharges when it re-issued the permit in 2019 with the same condition, which independently renders lawful the activity.

As a result, and with no allegations of non-compliance with the annual removal and reporting provisions, Radius's NPDES permit shields it from Soundkeeper's claims as a matter of law. The Ninth Circuit recently noted it is a "settled rule" that a NPDES permit shields the permittee from liability for conduct the permit allows. Soundkeeper is using this citizen suit to mount a collateral attack against the permit's terms, which courts have universally rejected.

Because there is no way for Soundkeeper to cure the defects in its complaint consistent with the 60-day notice of intent to sue it served on Radius, Soundkeeper's entire complaint must be dismissed with prejudice.

MOTION TO DISMISS- 1

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1604468829.1

## II. BACKGROUND

Radius operates a metal recycling facility located at 1902 Marine View Drive, Tacoma, Washington (the "Facility"), along the shoreline of the Hylebos Waterway in Pierce County. ECF # 1 ("Compl.") at ¶¶ 12, 17. Activities at the Facility include "the preparation, processing (including metal shredding), storage, and shipment of scrap metal." *Id*. at ¶ 17. "Radius receives cars and scrap metal piled onto barges, and Radius loads and/or unloads the cars and scrap metal onto its facility at its dock using loading/unloading equipment." *Id*. at ¶19.

Pursuant to Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b), Ecology issued the current NPDES permit # WA0040347 (the "Permit") to Radius's predecessor, Schnitzer Steel, on July 26, 2019, effective August 1, 2019, and the Permit remains in effect. *Id*. at ¶¶ 15, 18.[1] The Permit authorizes Radius "to discharge in accordance with the Special and General Conditions" of the Permit. Att. A (the Permit) at 1.

The Permit addresses the incidental discharge into the Hylebos Waterway of "metal debris" associated with Radius's operations and imposes specific inspection, removal, and reporting requirements for such metal debris. Condition S11 of the NPDES Permit provides:

> The Permittee must inspect annually all nearshore barge loading and unloading areas and remove any metal debris found on the bottom and along the banks of the Hylebos Waterway. A report must be submitted to Ecology detailing the findings of the inspection (pre-cleanup conditions and post-cleanup conditions), and methods and best management practices used during the cleanup process. Photographic documentation must be included with the report. The report must provide an estimate of amount of metal material recovered. The first submittal must be postmarked no later than December 31, 2019. The Permittee must submit one paper copy and an electronic copy (as a pdf document via WQWebPortal).

Att. A (the Permit) at 31. Condition S11 thus recognizes that discharges of metal debris will occur and directs Radius to take specific actions in response, including removal and prescriptive reporting to Ecology.

---

[1] The Permit is relied on in the Complaint, *see, e.g.* ¶¶ 15, 16, making it proper to consider on a motion to dismiss. *See* Section IV(A), *infra*. The Permit is available on Ecology's website here: https://apps.ecology.wa.gov/paris/DownloadDocument.aspx?id=283914, and the accompanying Fact Sheet is available here: https://apps.ecology.wa.gov/paris/DownloadDocument.aspx?id=283915. The Permit and Fact Sheet are also Attachment A and Attachment B to this motion, respectively.

MOTION TO DISMISS - 2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1      Soundkeeper concedes that Radius has complied with Condition S11 of the Permit. In its
2  notice of intent to sue, attached as Exhibit 1 to the Complaint (the "Notice Letter") and expressly
3  incorporated by reference into the Complaint, *see* Compl. ¶¶ 3, 16, Soundkeeper acknowledges
4  that Radius submits "annual Nearshore Loading and Unloading Area Evaluation and Maintenance
5  Reports." Compl., Exh. 1 (Notice Letter) at 3.

6      The 2023 Nearshore Loading and Unloading Area Evaluation and Maintenance Report (the
7  "2023 Maintenance Report")[2] details the steps Radius has taken to comply with Condition S11 of
8  the Permit. Radius retains a contractor to perform a bottom conditions survey to map the areas
9  where metal debris is located. *See* Att. C (2023 Maintenance Report), at 1-2. Radius then retains
10 another contractor to recover that metal using a grappling hook, electromagnet, and divers. *See id*.
11 at 2-6. Radius then reports all of this to Ecology, including GPS-generated maps showing specific
12 locations of metal debris identified and recovered, *see id*. at Figures 2-8, and photographs, *see id*.
13 at P-1 to P-02.

14      Ecology first required Radius to undertake these tasks of surveying and removing metal
15 debris from the waterway in the prior version of its NPDES permit issued in 2007.[3] Radius has
16 therefore been submitting these detailed reports to Ecology for over 15 years documenting the
17 metal debris falling into the waterway from its operations and subsequently recovered. Ecology is
18 therefore fully aware of what metal debris Radius discharges into the waterway every year,
19 because Radius surveys it, recovers it, and reports it. Ecology was aware of all this when it issued
20 the Permit in 2019.

21     Soundkeeper nonetheless contends that Radius is "discharging pollutants, including cars
22 and scrap metal…without a NPDES permit." Compl. at ¶ 31. Nothing in the Complaint specifies

---

[2] The report is publicly available on Ecology's website: https://apps.ecology.wa.gov/paris/DownloadDocument.aspx?id=466080. The 2023 Maintenance Report is Attachment C to this motion.

[3] The Court can also take judicial notice of this publicly available 2007 NPDES permit issued by Ecology. *See* Section VI(A). The 2007 permit is available at: https://apps.ecology.wa.gov/paris/DownloadDocument.aspx?id=17246, and is Attachment D to this motion. The requirement that Radius submit reports about its surveys and recovery of metal debris was in Condition S12 of that permit.

MOTION TO DISMISS - 3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   any "pollutant" that Radius is allegedly discharging other than "cars or scrap metal."[4]  Thus, the

2   only alleged "pollutant" at issue in this case is "cars and scrap metal."   The Notice Letter and

3   Complaint fail to provide any other information regarding dates, quantities, or other specifics of

4   the alleged noncompliant activity as required by any citizen suit notice.

5       Soundkeeper alternatively contends that Radius is violating Condition S5.C of its Permit

6   "every time it discharges cars and/or scrap metal into the Hylebos Waterway." *Id*. ¶¶ 37, 21; *see*

7   *also* ECF # 1 at 16 (section II of the Notice Letter referenced in ¶ 37 of the Complaint).

8       Soundkeeper also alleges that Radius is violating certain reporting requirements, as well as

9   the requirements of its Solid Waste Control Plan, Spill Control Plan, and Stormwater Pollution

10  Prevention Plan.  *See* Complaint at ¶ 37; *see also* ECF # 1 at 17-18 (sections III.2-5 of the Notice

11  Letter referenced in ¶ 37 of the Complaint).  However, these allegations are all based on

12  Soundkeeper's contention that Radius lacks permit coverage to discharge cars and scrap metal into

13  the waterway.  *See id*.

### III.     STANDARD OF REVIEW

15      A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "tests the

16  legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a

17  motion to dismiss, a plaintiff's complaint must have sufficient facts 'to state a facially plausible

18  claim to relief.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting

19  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)).  Put another

20  way, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

21  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

22  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] The Notice Letter included some allegations about PCBs, but Soundkeeper abandoned those allegations in the Complaint and they are not before the Court.  *See* Compl. at ¶ 36 (omitting section III.1 of the Notice Letter as a basis for Soundkeeper's cause of action for alleged permit violations).  The single alleged PCB exceedance would not be actionable in any event.  *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987) (only "ongoing" violations are actionable).

MOTION TO DISMISS  - 4

1    "When evaluating a Rule 12(b)(6) motion, the district court must accept all material

2 allegations in the complaint as true, and construe them in the light most favorable to the non-

3 moving party." *L.S. by and through Strode v. Bolduan*, 2025 WL 3492869, at *2 (W.D. Wash.

4 Dec. 4, 2025) (quoting *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th

5 Cir. 2013)). "But '[t]hreadbare recitals of the elements of a cause of action, supported by mere

6 conclusory statements, do not suffice.'" *Bolduan*, at *2 (quoting *Iqbal*, 556 U.S. at 678). Indeed,

7 "[i]f a complaint lacks a 'cognizable legal theory' or 'sufficient facts alleged to support a

8 cognizable legal theory[,]' a court should dismiss the complaint for failure to state a claim."

9 *Bolduan*, 2025 WL 3492869, at *2 (quoting *Navarro*, 250 F.3d at 732). "[T]he Court does not

10 assume the truth of legal conclusions presented as facts, see *Twombly*, 550 U.S. at 555, and mere

11 conclusory statements—such as stating that the elements of a claim are met without providing

12 supporting factual allegations—are not enough." *Grubert v. Caliber Home Loans Inc.*, 2024 WL

13 4417288, at *4 (W.D. Wash. Oct. 4, 2024) (citing *Iqbal*, 556 U.S. at 678).

14                             **IV.   ARGUMENT AND AUTHORITY**

15    **A.   The Court Should Consider on this Motion Radius's NPDES Permits, Fact Sheet, and the 2023 Nearshore Evaluation and Maintenance Report.**

16

17    In resolving this motion to dismiss, the Court properly should consider four documents that

18 demonstrate Soundkeeper's claims are legally defective: 1) Radius's current Permit 2) the current

19 Permit's accompanying Fact Sheet; 3) Radius's 2007 permit; and 4) the 2023 Maintenance Report

20 (*see* footnotes 1, 2 and 3, *supra*). Soundkeeper relies on the current Permit and the 2023

21 Maintenance Report in the Complaint, and each document is publicly available on Ecology's

22 website and subject to judicial notice.

23    On a motion to dismiss, the Court "may consider documents relied on in a complaint

24 without converting the motion to one for summary judgment." *Lamb v. Mortg. Elec. Registration

25 Sys., Inc.*, 2011 WL 5827813, at *2 (W.D. Wash. Nov. 18, 2011). "The Court may consider

26 evidence on which the complaint 'necessarily relies' when the complaint refers to the document

27 and the document is central to the plaintiff's claim, and no party questions the authenticity of the

28 copy attached to the Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Grubert*, at *4 (citing *Lamb*, at

MOTION TO DISMISS - 5

*2). A document may be deemed incorporated into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

The Court may also "take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986)). This includes facts "not reasonably subject to dispute" because they are either "generally known" or are "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Courts routinely take judicial notice of NPDES permits and permit-related materials on a motion to dismiss without converting the motion into a summary judgment motion. *See San Diego Coastkeeper v. Pick-Your-Part Auto Wrecking*, 2023 WL 4879832, at *5 (S.D. Cal. July 31, 2023) (taking judicial notice of the facility's NPDES permit and fact sheet, stormwater pollution prevention plan, and other permit-related documents); *Los Angeles Waterkeeper v. SSA Terminals, LLC,* 702 F. Supp. 3d 903, 915-16 (C.D. Cal. 2023) (taking judicial notice of an excerpt from a NPDES permit to the City of Long Beach).

The four documents for which Radius requests judicial notice are similar to those judicially noticed by other courts in similar cases. Each document is a matter of public record, maintained by Ecology in the ordinary course and publicly available on Ecology's website. Soundkeeper refers extensively to the Permit in its Complaint, *see* Compl. at ¶¶ 18-25, and contends that Radius is violating its terms and conditions, *see* Compl. ¶ 37. The Permit Fact Sheet is a legally required explanation of the Permit. *See* WAC 173-220-060(1) (Ecology "shall prepare a fact sheet for every draft permit determination."). The Permit Fact Sheet, 2023 Maintenance Report, and 2007 Permit are appropriate for judicial notice because, like the Permit, they were issued by Ecology, publicly available, and are not subject to reasonable dispute as to their authenticity or contents.

**B.   Soundkeeper's Claims Fail as a Matter of Law and Should be Dismissed.**

Soundkeeper's claims fail as a matter of law for two independent reasons, both grounded in Radius's Permit and the "permit shield." As will be seen below, that shield prevents suit for

MOTION TO DISMISS - 6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

matters Ecology knew of but failed to mention in the permit; *a fortiori* the shield protects where, as here, the permit explicitly regulates the incidental discharge of metal debris.

The Clean Water Act generally prohibits the discharge of any pollutant from a point source into navigable waters of the United States. *See* 33 U.S.C. § 1311(a). However, "[w]here a permittee discharges pollutants in compliance with the terms of its NPDES permit, the permit acts to 'shield' the permittee from liability under the CWA." *Natural Res. Def. Council, Inc. v. County of Los Angeles*, 725 F.2d 1194, 1204 (9th Cir. 2013) (citing 33 U.S.C. § 1342(k)). This is a "settled rule." *Puget Soundkeeper Alliance v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024) (noting that "if a permit-holder complies with the terms of its permit, it need not fear liability under the Clean Water Act"). "Neither the EPA nor a citizen can use an enforcement action or a citizen suit to revisit the validity of permit conditions." *Id*. As explained below, the plain language of Radius's permit and Radius's reporting of its discharges and removal of metal debris to Ecology (and no allegation that Radius failed to meet these Permit conditions) shield Radius from citizen suit liability in this case.

### 1. The plain language of Radius's NPDES permit authorizes the alleged discharges.

Soundkeeper's claims are foreclosed by the plain language of Condition S11 of Radius' Permit.[5] Courts construe individual NPDES permit like contracts, giving "effect to the natural and plain meaning of [of the permit's] words." *Puget Soundkeeper*, 104 F.4th at 101 (cleaned up). "If the language of the permit, considered in light of the structure of the permit as a whole, 'is plain and capable of legal construction, the language alone must determine the permit's meaning.'" *Id*. (cleaned up; quoting *Piney Run Pres. Ass'n v. County Comm'rs of Carroll Cnty*., 268 F.3d 255, 270 (4th Cir. 2001)). Courts interpret NPDES permits to give full meaning and effect to all of the permit's provisions, *Cnty. of Los Angeles*, 725 F.3d at 1206, and to avoid internal conflicts between a permit's terms, *Puget Soundkeeper All. v. APM Terminals Tacoma, LLC*, No. 17-cv-5016 BHS, 2020 WL 6445825, at *10 (W.D. Wash. Nov. 3, 2020). A permit is ambiguous only if

---

[5] For this argument, the Court need only take notice of the current Permit referenced in the Complaint; the other documents submitted for judicial notice are not needed.

MOTION TO DISMISS - 7

reasonable people could find its terms susceptible to more than one interpretation. *Cnty. of Los Angeles*, 725 F.3d at 1205.

Radius's Permit states that it is "authorized to discharge in accordance with the Special and General Conditions" of the Permit. Att. A (the Permit). at 1. Condition S11 of the Permit expressly requires, on an annual basis, that Radius remove any "metal debris" it may have discharged into the Hylebos Waterway, and establishes specific steps that Radius must take to address the discharges. Thus, Condition S11 requires Radius to inspect annually all nearshore barge loading and unloading areas, remove any metal debris found on the bottom or along the banks, document the inspection and cleanup process, provide photographic evidence, estimate the amount of metal recovered, and submit a report to Ecology. *See* Att. A (the Permit). at 31.

Annual removals of discharges of metal debris necessarily mean that the Ecology Permit authorizes the discharges subject to the removal condition. NPDES permits establish numeric limits and narrative conditions on pollutants, and give permittees authorization to discharge pollutants subject to those limits and conditions. If Ecology intended to prohibit Radius from discharging metal debris into the waterway, it would have stated so in the Permit, providing a discharge limit or condition of zero. If Ecology intended to prohibit Radius from discharging metal debris up to a certain number of pounds per day, month, or quarter, it would have stated so. Instead, with respect to "***any metal debris***" that incidentally falls in the Hylebos Waterway during barge loading and unloading, the express requirement is to pick it up at the end of the year and provide a report to Ecology. Att. A (the Permit) at 31 (Condition S11). Seeking a plain meaning of the Permit, just as one may seek plain meaning in a contract, Ecology provided that metal debris associated with Radius's barge-based recycling operations may incidentally fall into the waterway and authorized such discharges subject to Condition S11. Nowhere do any of these permissions to discharge even suggest that dropping some metal debris is actionable or a permit violation.

The plain meaning of Condition S11 is reinforced by the Permit's Fact Sheet. Ecology describes Condition S11 as requiring Radius "to annually conduct a nearshore loading and

MOTION TO DISMISS - 8

unloading assessment *of incidental material that has fallen into the Waterway* along their docks." Att. B (Permit Fact Sheet) at 30 (emphasis added).

Based on the plain language of Condition S11 and the permit as a whole, no reasonable person could construe Radius's NPDES Permit as *forbidding* the discharge of metal debris, including cars and scrap metal, as Soundkeeper contends. Compl. at ¶¶ 19, 21. Soundkeeper contends that the "Permit does not authorize Radius' discharges of cars and scrap metal to the Hylebos Waterway." *Id*. at ¶ 19. Soundkeeper also contends that these discharges "violate the Permit's S5.C prohibition on discharges of solid waste materials to surface water." *Id*. at ¶ 21. This appears to be a typo, as Condition S5.C pertains to a process for revising or modifying Radius's Solid Waste Control Plan. In any event, the Permit's solid waste provisions in Condition S5 do not pertain to the incidental discharge of metal debris explicitly addressed in Condition S11. Condition S11 is clear and unambiguous. Incidental discharges of metal debris will occur as a routine part of Radius's operations and the condition specifies what to do about them. Thus, because the discharge of cars and scrap metal is authorized by a plain reading of Condition S11 and the structure of the Permit as a whole, Radius is not alleged here to be out of compliance and the Permit shields Radius from liability under the CWA. *Puget Soundkeeper Alliance*, 104 F.4th at 105.

Soundkeeper's real dispute seems to be with Ecology's permitting decision to authorize Radius to discharge metal debris into the waterway. But this Court is the wrong forum to litigate that dispute. *Puget Soundkeeper*, 104 F.4th at 105 ("Our approach is consistent with that of other courts that have rejected collateral attacks in Clean Water Act enforcement actions."); *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 138 (1977) (a purpose of 33 U.S.C. § 1342(k) is to relieve a permittee of "having to litigate in an enforcement action the question whether their permits are sufficiently strict;" the statute "serves the purpose of giving permits finality"). If so, Soundkeeper's recourse was to challenge the Permit when Ecology issued it, not to bring a citizen suit against Radius years later for doing what the Permit allows.

MOTION TO DISMISS - 9

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

### 2. Radius's permit shield also independently covers the alleged discharges because they were disclosed to Ecology.

Radius's discharges of metal debris are also shielded by the Permit because Radius fully disclosed these discharges to Ecology before Ecology issued the Permit. As the Fourth Circuit explained in the seminal case of *Piney Run*, "all discharges adequately disclosed to the permitting authority are within the scope of the permit's protection." 268 F.3d at 269. The Ninth Circuit has repeatedly cited *Piney Run* with approval. *See Puget Soundkeeper,* 104 F.4th at 102; *Alaska Cmty. Action of Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1176–77 (9th Cir. 2014); *Cnty. of Los Angeles,* 725 F.3d at 1204.

In *Piney Run*, the Fourth Circuit construed the scope of the permit shield in 33 U.S.C. § 1342(k), found the permit provision at issue ambiguous, and held that a "NPDES permit covers all pollutants disclosed to the permitting authority during the permit application process." 268 F.3d at 267 (citing *In re Ketchikan Pulp Co.*, 7 E.A.D. 605, 1998 WL 284964, at *12-13 (EPA 1998) ("[W]hen the permittee has made adequate disclosures during the application process regarding the nature of its discharges, unlisted pollutants may be considered to be within the scope of an NPDES permit, even though the permit does not expressly mention those pollutants.")).

An instructive case is *Tennessee Clean Water Network v. Tennessee Valley Authority*, 206 F. Supp. 3d 1280, 1302 (M.D. Tenn. 2016). In that case, the court dismissed a Clean Water Act citizen suit claim on a Rule 12 motion[6] under *Piney Run* because the permittee disclosed the challenged conduct to the regulator and the conduct was reasonably contemplated by the NPDES permit. Defendant Tennessee Valley Authority ("TVA") used two ponds to treat coal ash, which the plaintiffs alleged were part of a pre-existing stream into which TVA lacked authority to discharge. The court reviewed the complaint, the NPDES permit, and TVA's permit application,[7]

---

[6] TVA had submitted motions to dismiss under Rules 12(b)(6) and 12(c). *TVA*, 206 F. Supp. 3d at 1289. The court noted that the standard for review under both rules is the same. *Id*. at 1290.

[7] The court appears to have considered these materials in resolving TVA's Rule 12 motions because they were public records. *See TVA*, 206 F. Supp. 3d at 1290 ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." (quotation and citation omitted)).

MOTION TO DISMISS - 10

1  and concluded that use of the ponds "is central to the overall treatment system that the Permit
2  envisions," and that TVA disclosed its intent to use the ponds for treatment in its permit renewal
3  application. *Id*. The court granted TVA's Rule 12 motion to dismiss this claim because the
4  discharge "is both disclosed under and reasonably contemplated by the NPDES permit." *Id*.
5  Thus, even though TVA's permit may not have expressly authorized discharges into waters of the
6  United States that the plaintiffs complained about, the court found such discharges were impliedly
7  covered by the permit.

8        Like TVA's contemplated use of the ash ponds, Radius disclosed to Ecology that it
9  incidentally discharges metal debris into the waterway in connection with its operations. This is
10 shown by Radius's 2007 permit, which contained a provision nearly identical to Condition S11 in
11 the current Permit. Like Radius's 2019 Permit, it required Radius to annually survey the metal
12 debris incidentally deposited on the waterway bottom, recover that metal debris, and report these
13 discharges to Ecology, with the first such report postmarked no later than January 2, 2008. *See*
14 Att. D (2007 Permit) at 23 (Condition S12). Thus, by the time Ecology issued Radius's current
15 Permit on July 26, 2019, it would have received 17 annual reports from Radius documenting these
16 incidental discharges of metal debris. An example of these reports is found at Attachment C to
17 this motion, which demonstrates the extensive documentation about the location and recovery of
18 this metal debris. *See* Att. C (2023 Maintenance Report). It is clear that Radius disclosed these
19 discharges to Ecology. The discharges are also clearly contemplated by Radius's current Permit,
20 as shown by the continuation of the very same condition (but set forth in Condition S11 instead of
21 S12).

22       Thus, under *Piney Run*, Radius's discharges of metal debris are included within the scope
23 of the permit shield, and cannot be the subject of a citizen suit. *See Puget Soundkeeper,* 104 F.4th
24 at 102; *Cnty. of Los Angeles,* 725 F.3d at 1204. Regardless of whether Soundkeeper characterizes
25 these claims as based on "unpermitted discharges" (supporting its First Cause of Action) or "illicit
26 and prohibited discharges" (supporting its Second Cause of Action), *see* Compl. at ¶¶ 31, 37, the
27 claims fail as a matter of law.

28

MOTION TO DISMISS - 11

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

### 3. Soundkeeper's remaining claims also fail.

All of Soundkeeper's remaining claims are derivative of its flawed premise that Radius lacks authority to discharge metal debris into the Hylebos Waterway, and thus fail for the same reasons.

Soundkeeper contends that Radius is in violation of Condition S3.F.1 of the Permit, which requires Radius to *report* permit violations, non-compliance and unauthorized discharges. Compl. at ¶ 37. But the only permit violations or unauthorized discharges Soundkeeper alleges are the discharges of "cars and/or scrap metal to the Hylebos Waterway." *See id*. As explained above, those discharges are neither unpermitted nor permit violations, and thus cannot give rise to a violation of Condition S3.F.1.

Soundkeeper also alleges various violations of the Permit requirements for the Solid Waste Control Plan, Spill Control Plan, and Stormwater Pollution Prevention Plan. *See id*.; Compl. ¶¶ 20-23 (alleging that cars and scrap metal falling into the Hylebos Waterway constitute an unauthorized solid waste, spilled material, or illicit non-stormwater discharge). But again, the only alleged violations of these plans arise out of the false premise that the discharging of "cars and scrap metal" is unauthorized. *See id*. To the contrary, Ecology authorized the incidental discharges, and decided to regulate Radius's discharges of metal debris, including cars and scrap metal, through Condition S11 of the Permit. Once again, Soundkeeper mounts an improper collateral attack on the Permit.

### V. CONCLUSION

Soundkeeper's claims are all meritless because they are foreclosed by Radius's Permit and the permit shield. The Court can and should make this determination as a matter of law based on the allegations in the Complaint, and a small number of documents most of which are relied on in the Complaint and all of which are judicially noticeable. Dismissal with prejudice is appropriate, because there is no way for Soundkeeper to amend its Complaint to cure these defects. In addition, any new allegations would require a new Notice Letter before they might, hypothetically, be actionable. *See* 33 U.S.C. § 1365(b).

For all the foregoing reasons, the Court should dismiss the Complaint with prejudice.

MOTION TO DISMISS - 12

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Respectfully submitted.

DATED this 22nd day of December, 2025.

K&L GATES LLP

By: *s/ Endre Szalay*
Endre Szalay, WSBA #53898
J. Timothy Hobbs, WSBA #42665
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: (206) 623-7580
Fax: (206) 623-7022
Endre.Szalay@klgates.com
Tim.Hobbs@klgates.com

*Attorneys for Defendant Radius Recycling Corporation*

MOTION TO DISMISS - 13

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022